UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PETER MacINERNEY,

                                    Plaintiff,

v.                                                                                 5:21-CV-0818
                                                                                (LEK/ML)

WILBER ALLEN; ABIGAIL LAWTON;
CHRISTINE H. O'NEIL; and TINA
WAYLAND-SMITH,

                                  Defendants.
_____

APPEARANCES:                                                       OF COUNSEL:

PETER MacINERNEY
  Plaintiff, *Pro Se*
132 Palmer Street
St. Augustine, Florida 32084

MIROSLAV LOVRIC, United States Magistrate Judge

**ORDER and REPORT-RECOMMENDATION**

      The Clerk has sent this *pro se* amended complaint (Dkt. No. 10) and supplement to the amended complaint (Dkt. No. 14), filed by Peter MacInerney ("Plaintiff") to the Court for review.  For the reasons discussed below, I recommend that Plaintiff's Amended Complaint (Dkt. No. 10) and supplement to the amended complaint (Dkt. No. 14), be dismissed in their entirety without leave to amend.

**I.      BACKGROUND**

      Although most of his Amended Complaint is rambling and contains virtually no factual detail, construed liberally, the gravamen of Plaintiff's Amended Complaint alleges that

defendants Wilber Allen, Abigail Lawton, Christine H. O'Neil, and Tina Wayland-Smith[1] (collectively "Defendants") violated Plaintiff's rights.[2] (*See generally* Dkt. No. 10.)

More specifically, Plaintiff appears to allege that Defendants are affiliated with the Oneida Community Mansion House, Incorporated ("OCMHi"), which has been designated as a tax-exempt organization pursuant to section 501(c)(3) of the Internal Revenue Code and as a National Historic Landmark by the Department of Interior National Parks Service. (*Id*.) Plaintiff alleges that he "is a federal actor as a citizen of the United States" and "son of two parents who served in uniform as officers in the United States Army." (Dkt. No. 10 at 11.) Plaintiff alleges that Defendants are federal actors because they—at the relevant time—were employed, appointed, or volunteered as trustees and attorneys for OCMHi, which is a federally-designated 501(c)(3) corporation and a National Historic Landmark open to the public.

The Amended Complaint alleges that beginning in September 2018, Plaintiff was a scholar resident for OCMHi and was working on a book titled *MakingHistory.info*, which included a report about and discussions of interactions among women of the Oneida Indian Nation and Oneida Community, as "artifacted by the OCMH-held object known as 'The Best Quilt.'" (*Id*. at 17-18.)

---

[1] Based on Plaintiff's original complaint, Wilber Allen is currently the only named defendant on the Court's docket sheet. When liberally construed, Plaintiff's Amended Complaint names three additional defendants: (1) Abigail Lawton, (2) Christine H. O'Neil, and (3) Tina Wayland-Smith.

[2] The Court notes that Plaintiff's Amended Complaint (Dkt. No. 10) references John Companie as a defendant, but the text has a strike through it with Plaintiff's initials next to the strike out. (*See e.g.,* Dkt. No. 10 at 5, 15.) Moreover, the Amended Complaint contains several references to Defendants, including a header and footer on the type-written pages that do not include Mr. Companie as a party. (Dtk. No. 10 at 5-75.) However, the supplement to the Amended Complaint appears to include only Defendant Wayland-Smith and Mr. Companie as defendants. (*See generally* Dkt. No. 14.) To the extent that Plaintiff's claims are construed against Mr. Companie, I recommend that they be dismissed for the reasons stated herein.

Plaintiff alleges that via e-mail on January 3, 2019, Defendant Lawton "responded tortiously" to Plaintiff's request "for informal imagery of an artifact, thus violating" Plaintiff's "individual freedom and civil rights." (*Id*. at 26.) Plaintiff alleges that Defendant Lawton's e-mail attached a form that "block[ed], obstruct[ed], and prevent[ed] the freedom and rights of" Plaintiff. (*Id*. at 28.) The Amended Complaint purports to include a copy of the form, which includes the letterhead for OCMHi and is titled "Application for Permission to Publish." (*Id*. at 41.)

Plaintiff alleges that on July 15, 2019, he e-mailed his friend (non-party) Tim Cummings, about visiting Mr. Cummings at "his private residence," which is also the address of the Oneida Community Mansion House ("OCMH") and the headquarters of OCMHi. (*Id*. at 43.) Plaintiff alleges that Mr. Cummings responded and informed Plaintiff that any visits to the environs of OCMH and OCMHi must be approved by the general manager, Defendant O'Neil. (*Id*. at 44.) Plaintiff alleges that he e-mailed a "query" to Defendant O'Neil on July 15, 2019—presumably about the information provided by Mr. Cummings—and on July 16, 2019, she responded attaching an electronic document signed by Defendant Allen ("Allen Letter"). (*Id*. at 45.) Plaintiff alleges that the Allen Letter orders that Plaintiff "may not appear at or set foot in, or upon, the Cummings private residence, or the entire 'environs' of the OCMH and OCMHi." (*Id*. 45.) Plaintiff alleges that the Allen Letter also purported to send a carbon copy to the Oneida City Police, but that it was never received by the Oneida City Police or the New York State Police. (*Id*. at 60-61.)

Plaintiff alleges that on July 17, 2019, he e-mailed Mr. Companie "to attempt amicable resolution of the tortious, wrongful, harmful acts committed by the Allen [L]etter" but that Mr. Companie failed to respond. (*Id*. at 63.) Plaintiff alleges that on November 15, 2019, Defendant

Wayland-Smith—who appears to be Mr. Companie's law partner—dated a letter that was sent via the United States Postal Service, to Plaintiff who was located in Florida at the time ("Wayland-Smith Letter").  (*Id*. at 63-64.)  Plaintiff alleges that the Wayland-Smith Letter also included a OCMH check in the amount of $50.00 made payable to Plaintiff endorsed by Defendant O'Neil, which purported to represent donations made by Plaintiff that he did not "recognize or acknowledge."  (*Id*. at 64-65.)

Based on these factual allegations, Plaintiff alleges that he was harmed by each of the four Defendants.  (*See generally* Dkt. No. 10.)

In addition, Plaintiff filed a supplement to the amended complaint, which seeks censure, unspecified penalties, disbarment, and compensation from Defendant Wayland-Smith and Mr. Companie, as attorneys.  (*See generally* Dkt. No. 14.)  Plaintiff's supplement includes details regarding additional correspondence between him, Defendant Wayland-Smith, and Mr. Companie in their capacities as attorneys for OCMH and OCMHi.  (*Id*.)

## II.   LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In addition, the Court shall dismiss any action where the Complaint fails to allege facts plausibly suggesting subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1988) (holding that subject matter jurisdiction is a "threshold question that must be resolved . . . before proceeding to the merits."); *Humphrey v. Syracuse Police Dep't*, 758 F. App'x 205, 205-06 (2d Cir. 2019) (citing *United States v. Bond*,

762 F.3d 255, 263 (2d Cir. 2014)) ("[b]efore deciding any case on the merits, a district court must determine that it has subject matter jurisdiction over the matter."); *Koziel v. City of Yonkers*, 352 F. App'x 470, 471 (2d Cir. 2009) (summary order) (affirming *sua sponte* dismissal of complaint on initial review for lack of subject matter); *Talley v. LoanCare Serv., Div. of FNF*, 15-CV-5017, 2018 WL 4185705, at *5 (E.D.N.Y. Aug. 31, 2018) (dismissing on initial review, action challenging state court mortgage foreclosure judgment because the court lacked jurisdiction); *Eckert v. Schroeder, Joseph & Assoc.*, 364 F. Supp. 2d 326, 327 (W.D.N.Y. 2005) (citing *Hughes v. Patrolmen's Benevolent Ass'n of the City of N.Y., Inc.*, 850 F.2d 876, 881 (2d Cir. 1988), *cert. denied*, 488 U.S. 967 (1988)) ("[a] court shall, *sua sponte*, dismiss a complaint for lack of subject matter jurisdiction as soon as it is apparent that it lacks subject matter jurisdiction.").

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he

6

decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

### III.   ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Amended Complaint and Supplement to the Amended Complaint with this principle in mind, I recommend that all causes of action be dismissed.

####   A.   Constitutional Claims

#####    1.   Claims Pursuant to 42 U.S.C. § 1983

To the extent that Plaintiff attempts to assert any constitutional claims, the Court construes those claims to be made under 42 U.S.C. § 1983. "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (internal quotation marks omitted). "A plaintiff pressing a claim of [a] violation of his constitutional rights under § 1983 is thus required to show state action." *Fabrikant*, 691 F.3d at 206 (internal quotation marks omitted). "State action requires *both* . . . the exercise of some right or privilege created by the State . . . *and*" the involvement of "a person who may fairly be said to be a state actor." *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks and brackets omitted).

To the extent that Plaintiff attempts to assert any claims pursuant to 42 U.S.C. § 1983, I recommend that those claims be dismissed because he does not plausibly allege that Defendants

engaged in state action. Put simply, none of the conduct that Plaintiff alleges is "fairly attributable to the state." *Fabrikant*, 691 F.3d at 207 (internal quotation marks omitted). Plaintiff pleads no facts that would establish that Defendants' conduct amounted to state action. *See McGugan v. Aldana-Bernier*, 752 F.3d 224, 229-31 (2d Cir. 2014) (holding that a private hospital's involuntary commitment of a patient was not state action, even though the hospital received state funding and was subject to extensive state regulation). The mere fact that OCMH and OCMHi "is organized as a § 503(c)(3) nonprofit organization under the Internal Revenue Codes does not make any of [] [D]efendants a state actor." *Chance v. Reed*, 538 F. Supp. 2d 500, 507 (D. Conn. 2008) (citing *Moglia v. Sullivan Cnty. Head Start, Inc.*, 988 F. Supp. 366, 367 (S.D.N.Y. 1997) (dismissing claim under section 1983, where "federal and state officials lack control of Head Start programs' personnel decisions adequate to render personnel actions in such programs 'under color of law.'")). Moreover, "[p]rivate attorneys are generally not 'state actors' for purposes of § 1983." *O'Donoghue v. United States Soc. Sec. Admin.*, 828 F. App'x 784, 787 (2d Cir. 2020) (citing *Rodriguez*, 116 F.3d at 65-66); *see Szymonik v. Connecticut*, 807 F. App'x 97, 102 (2d Cir. 2020) (holding that the defendant, "as a private attorney, was not a state actor; that he was licensed by the state to practice law does not render him a state actor."); *Caldwell v. Barrier*, 19-CV-1516, 2020 WL 918717, at *3 (N.D.N.Y. Feb. 26, 2020) (Hummel, M.J.) ("Private attorneys, whether court appointed or privately retained, are not liable under 42 U.S.C. § 1983."), *report and recommendation adopted by* 2020 WL 1904034 (N.D.N.Y. Apr. 17, 2020 (Sannes, J.).

Instead, the only governmental action alleged in the Complaint is Defendant Allen's alleged statements that law enforcement would be contacted if Plaintiff further communicated with the employees and staff of OCMH or if Plaintiff was found trespassing on the grounds of

OCMH, which, if valid, *might* have led to Plaintiff's incarceration. "The potential for incarceration arising from a threat to notify the police of an individual's alleged transgression simply does not constitute governmental action in any sense of the phrase." *Tornheim v. Kohn*, 00-CV-5084, 2002 WL 482534, at *6 (E.D.N.Y. Mar. 26, 2002). The Complaint does not contain any factual allegations plausibly suggesting that Defendants acted as agents of the government or with the participation or knowledge of any government official.

As a result, I recommend that Plaintiff's claims pursuant to 42 U.S.C. § 1983 be dismissed for failure to allege facts plausibly suggesting a cause of action.

2. ***Bivens* Claims**

To the extent that Plaintiff attempts to assert a constitutional claim under *Bivens*, he must allege "(1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law." *Viola v. Bryant*, 17-CV-0853, 2017 WL 2676407, at *2 (D. Conn. June 21, 2017). For the reasons set forth above in Part IV.A.1. of this Order and Report-Recommendation, Plaintiff fails to allege facts plausibly suggesting any action by an official acting under color of federal law. The mere fact that Defendants are federal citizens, does not mean that their actions are taken as "officials acting under color of federal law."

In addition, Plaintiff's Amended Complaint and Supplement to the Amended Complaint fail to allege any deprivation of a right secured by the Constitution or laws of the United States. Construing the Amended Complaint liberally, Plaintiff alleges that Defendants communicated with him in a way that he found offensive. These allegations fall far short of a Constitutional deprivation.

## B. State Law Claims

Having found that all of Plaintiff's federal claims are subject to dismissal, I recommend that, to the extent that Plaintiff has asserted any state law claims, the Court decline to exercise jurisdiction over those claims.[3] *See* 28 U.S.C. § 1367(c)(3) (providing that a district court "may decline to exercise supplemental jurisdiction over [pendent state law claims] if . . . the district court has dismissed all claims over which it has original jurisdiction"); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986) (citing *Kavit v. A.L. Stamm & Co.*, 491 F.2d 1176, 1180 (1974)) (holding that "federal courts, absent exceptional circumstances, should abstain from exercising pendent jurisdiction when federal claims in a case can be disposed of by summary judgment").

In the alternative, I recommend that Plaintiff's state law claims be dismissed for failure to state a claim.

---

[3] Breach of contract, fraud, and defamation are state law claims. *See Logan v. Town of Windsor, New York*, 833 F. App'x 919, 920 (2d Cir. 2021) ("The complaint relied on no provision of federal law and instead sought relief only for claims of negligence and defamation, both of which are common-law torts governed by state law."); *Simmonds v. Longo*, 19-CV-1319, 2020 WL 1644206, at *4 (N.D.N.Y. Mar. 11, 2020) (Lovric, M.J.) (citing *Premium Mortgage Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009)) (holding that common law fraud is a New York State law claim that lacks a federal question for purposes of maintaining subject matter jurisdiction pursuant to 28 U.S.C. § 1331), *report and recommendation adopted by* 2020 WL 1643394 (N.D.N.Y. Apr. 2, 2020) (Hurd, J.); *Wilson v. Neighborhood Restore Dev.*, 18-CV-1172, 2018 WL 2390143, at *3 (E.D.N.Y. May 18, 2018) (citing *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,* 797 F.3d 160, 182 (2d Cir. 2015)) (holding that "breach of contract, breach of the warranty of habitability, negligence, personal injury and fraud . . . are state law claims.").

### 1. Breach of Contract

"[I]n order to establish a claim for breach of contract, a plaintiff must prove, by a preponderance of the evidence, (1) the existence of a contract between itself and that defendant, (2) performance of the plaintiff's obligations under the contract, (3) breach of the contract, and (4) damages to the plaintiff caused by the defendant's breach." *OOCL (USA) Inc. v. Transco Shipping Corp.*, 13-CV-5418, 2015 WL 9460565, at *4 (S.D.N.Y. Dec. 23, 2015) (citation omitted).

Here, Plaintiff has failed to allege (1) the existence of a contract between himself and Defendants, (2) performance of Plaintiff's obligations under the contract, (3) Defendants' breach of the contract, and (4) any damages to Plaintiff caused by Defendants' breach. As a result, I recommend that, to the extent Plaintiff asserted a breach of contract claim, that claim be dismissed for failure to state a claim.

### 2. Fraud

Under New York law, fraud requires proof of (1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages. *Eurycleia Partners, LP v. Seward & Kissel, LLP,* 12 N.Y.3d 553, 559 (N.Y. 2009); *Lama Holding Co. v. Smith Barney,* 88 N.Y.2d 413, 421, (N.Y. 1996). At the pleading stage in federal court, a plaintiff must "assert facts that plausibly support the inference of fraud." *Cohen v. S.A.C. Trading Corp.,* 711 F.3d 353, 360 (2d Cir. 2013). Additionally, a plaintiff must satisfy the heightened pleading standard set forth in Rule 9(b), which reads:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b).

In essence, Rule 9(b) places two further burdens on a plaintiff alleging fraud—the first goes to the pleading of the circumstances of the fraud, the second to the pleading of the defendant's mental state. As to the first, the complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (internal quotation marks omitted). As to the second, although mental states may be pleaded "generally," a plaintiff must nonetheless allege facts "that give rise to a strong inference of fraudulent intent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006).

The Amended Complaint and supplement to the Amended Complaint fail to allege facts plausibly suggesting any of the required elements for a fraud cause of action. (*See generally* Dkt. Nos. 10, 14.) As a result, to the extent that the Amended Complaint and supplement to the Amended Complaint are construed as asserting a cause of action for fraud, I recommend that they be dismissed for failure to state a claim.

### 3. Defamation

"Defamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name." *Hogan v. Herald Co.*, 84 A.D.2d 470, 474 (N.Y. App. Div. 4th Dep't 1982), *aff'd* 58 N.Y.2d 630 (N.Y. 1982). "Generally, spoken defamatory words are slander; written defamatory words are libel." *Albert v. Loksen*, 239 F.3d 256, 264 (2d Cir. 2001).

"Under New York law a [libel] defamation plaintiff must establish five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3)

fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019).  In addition, "[u]nder New York law, to state a cause of action for slander, the plaintiff must allege facts plausibly suggesting (1) a defamatory statement of fact, (2) that is false, (3) published to a third party, (4) of and concerning the plaintiff, (5) made with the applicable level of fault on the part of the speaker, (6) that causes either special harm or constitutes slander per se, and (7) that is not protected by privilege."  *Ryle v. Rehrig Pac. Co.*, 19-CV-1478, 2020 WL 6196144, at *8 (N.D.N.Y. Oct. 22, 2020) (Suddaby, C.J.) (citing *Albert*, 239 F.3d at 265-66).

Plaintiff fails to allege facts plausibly suggesting any of the elements for a defamation claim.  As a result, to the extent that Plaintiff asserted a defamation claim, I recommend that it be dismissed for failure to state a claim.[4]  *See Bey ex rel. Dickerson v. Kelly*, 20-CV-2399, 2020 WL 3414612, at *3 (E.D.N.Y. June 22, 2020) (dismissing the plaintiff's defamation claim where he failed to allege facts in support of the five elements of defamation).

## IV.   OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."

---

[4]   The Court also notes that Plaintiff's defamation claims may be time-barred.  The statute of limitations for defamation claims under New York law is one year.  N.Y. C.P.L.R. § 215(3).  The allegations in Plaintiff's Amended Complaint and supplement to the Amended Complaint relate to incidents that occurred more than one year before the initiation of this action.

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[5]

In this instance, I conclude that any amendments to Plaintiff's Amended Complaint (or supplement to the Amended Complaint), would be futile. Plaintiff has already amended his Complaint and filed a supplement to the Amended Complaint. (*Compare* Dkt. 1, *with* Dkt. No. 10, *and* Dkt. No. 14.) As a result, I recommend that Plaintiff's Amended Complaint and supplement to the Amended Complaint be dismissed without leave to amend. *See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 168 (2d Cir. 2003) (quoting *Dluhos v. Floating & Abandoned Vessel, Known as "New York,"* 162 F.3d 63, 69 (2d Cir. 1998)) (finding that the "District Court did not abuse its discretion in denying [the plaintiff] leave to amend the complaint because there was a 'repeated failure to cure deficiencies by amendments previously allowed.'"); *Salinger v. Projectavision, Inc.*, 972 F. Supp. 222, 236 (S.D.N.Y. 1997) ("Three bites at the apple is enough.").

**ACCORDINGLY**, it is

---

[5]  *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

**ORDERED** that in accordance with footnote 1 of this Order and Report-Recommendation, the Clerk of the Court is directed to **CORRECT** the caption of the docket sheet to add the following defendants: Abigail Lawton, Christine H. O'Neil, and Tina Wayland-Smith; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD** Plaintiff's Amended Complaint (Dkt. No. 10) and supplement to the Amended Complaint (Dkt. No. 14) for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[6]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[7]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: February 23, 2022
       Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[6]   The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[7]   If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).